I'm John M. Edgar, appearing on behalf of the appellant. We are here before you today on a ruling on a motion to dismiss for failure to state a claim. We all agree to the rule and what it says. Well pleaded allegations are taken as true. We've pled certain facts and they're all in agreement that the charter of this particular savings and loan interstate had two charter provisions. One provided for reserve surplus and distribution of the earnings provided for shall distribute net earnings and in lieu thereof or addition may distribute surplus. And the charter also provided there was no amendment, alteration, change, repeal without member approval. As the court no doubt knows from reading the briefs, the interstate had a huge surplus, $25 million. It merged into another savings loan with no excess surplus. We gave allegations of fact that the charter gave the plaintiffs a certain equity interest in the surplus and that the merger was a violation of the agreement and it deprived the plaintiffs of ownership interest in the surplus and conferred a benefit without compensation on the other savings and loan. It's also no agreement that the charter is a contract. We all agree to that. Thereafter, I think the court's analysis goes awry. This is a decision without any legal support. They not only did not consider our facts as being true, they didn't even consider our facts. We did not plead a case based on ownership. We pled a case based on certain contractual opinion. The court provided, for example, in Roman 2A, the member depositors' ownership of interstate did not give them rights comparable to those of stockholders in a bank. We didn't plead a case based on our member deposit ownership. We pled a case based on contract, the charter. But the charter, isn't the charter just a standard form charter, the same as in all the other cases that go the other way? No, Your Honor. There's no evidence of that whatsoever. And the amicus tried to inject that and there's even a reference to that in the opinion in a footnote, but that's not the case. There's no evidence of that whatsoever. We believe this is a unique charter and nevertheless, that is what we pled and whether it's unique or not, we believe it is unique. It still grants rights. On its face, it grants rights. It appears to grant some rights. And then the defendants take a 30-year-old and 60-year-old precedent that absolutely do not consider anything like this. Do not consider contractual rights under a charter. They're tax cases. One's an ad vorem tax. The other is an IRS case. Counsel, I want to ask you about the charter in particular and the language it uses because you keep saying it grants contractual rights, but it uses the permissive word may when it describes the right, or not the right, but when it describes the decision to distribute surplus funds. Like in the last line, it says, and I'm just reading it, any of the association surplus funds may likewise be distributed. And so, I mean, it doesn't seem to create any kind of certain right. It just says that the board of directors may do this if they so desire. Well, the earnings provision is obligatory. It shall. And then the surplus phrase says may, but it says likewise may, which references back to the shall, but that's not the critical thing. Even under Paulson, which rules on an IRS provision, Paulson notes, that case notes, that there may be rights in a voluntary liquidation of surplus. So perhaps this is a voluntary liquidation. It certainly was a cessation of the charter, and it certainly gave rise to the right to vote on it as to whether or not to to merge. The other alternative would have been perhaps to have just liquidated. Sorry, counsel, are you arguing this was a voluntary liquidation? I'm saying that under the, as the case developed, it could possibly be construed as a voluntary liquidation. It was, in fact, a termination of the charter, that the charter by operation of statute terminated when the merger was completed. The charter had to be amended to adopt the provisions in the other, in the other savings and loan. So there was a change that would have required a vote, and they didn't take that. They didn't take that vote. But rather, they delivered this surplus to the other savings and loan. Now, there is... What's the remedy? So that's your second point, as I take, your second breach of fiduciary duty claim on the vote. Correct. What are your damages if there's a failure to vote, or what's the remedy if you assume that this is a contract and it gave your depositors a right to vote? You're not here on an injunction or preliminary matter. You're seeking damages, as I understand. Well, we're here on a motion to dismiss, and obviously we are seeking damages, and the court, in fact, swept those away with the same provision. We believe, we believe that the decision to merge deprived us of the ownership interest in the surplus. First of all... But if we disagree with you on the surplus, does your second claim go away? I think your brief indicates, and I don't want to misquote you, but I think it's that all of your claims are premised on the theory that you had an ownership interest, whether it's under the charter or under some contract theory. If we disagree on that, does your second claim go away? Our claim's based on the fact that we had a contractual right. And if we disagree under your first breach of fiduciary duty, does that resolve the second one as well? No, Your Honor, it does not, because the amendment, I mean, if we had voted against it, then these funds would not have been delivered gratuitously to the other institution, the surplus. But I think the question is, what's your damage for a failure, a denial of a right to vote? Our damage was, if you had a right to vote, you had an interest in the surplus. That's reflected in the other charter provision. Whether or not they liquidated it... I think what Judge Kobus is suggesting is if you lose on the interest in the money, doesn't your right to vote case fail as well? No, Your Honor, we would say that it does not. Again, assuming we disagree with you on the right to the proceeds, what's your damage for a denial of a right to vote that we don't know even the possible outcome of? The denial of the right to vote basically would have prevented the surplus from being gratuitously bestowed on the other savings amount. So you're back to the surplus, though? Yes, because we had a right, whatever that right was, even Paulson notes that we would have had a right in a voluntary liquidation. But the premise to his question was that you lose, we don't agree with the right to the surplus. That's the premise to the question. Then does your voting rights claim also fail? Well, Your Honor, no, I don't believe so, because if even the damages may be nominal, they're still damages. So they... I hate to press that, but damages from what? What is the nature of the damages? Well, Your Honor, when the case, the savings loan was sitting there before the merger. It had a $25 million surplus. So we're back to the surplus again? Back to the surplus. Okay. And I think we're going around in circles, so I won't ask anymore about that. Okay. They basically set up another case and the defendant set up another case that our position was premised on a membership only. We're pleading a contract case and we should have been permitted to go forward to that case. There is no evidence of any adverse effect on the industry. This is probably unique here because of this huge surplus. So it's not a usual case, I think, but it's nevertheless maybe unique. But in any event, at this stage of the proceeding, under the allegations taken as true and the contractual rights that we have pled and the admission that the charter is a contract, the case should have been permitted to go forward. And I'll reserve the remainder of my time. Very well. May it please the Court. Adrienne Van Winkle on behalf of the appellees. Your Honor hit the nail on the head, Judge Strass. The bank directors here had 100% discretion to decide what to do with the surplus, whether to retain it or whether to distribute it. And plaintiff's ownership theory turns that idea on its head. This is a case about depositors in a mutual bank who are demanding a windfall distribution of $25 million from the surplus of the bank, which the bank and its directors worked generations to build up. Interstate was a pillar of its community and it was prudently managed by bank directors for over 100 years. During that time, as plaintiffs have pled, there were never any distributions of surplus. Instead, the bank directors exercised their discretion, as was their right, to retain the capital, which the regulator encouraged them to do so that Interstate was a safe and sound banking institution and so that it can continue to serve its community through economic, rough economic patches like the Great Depression and like the Great Recession that we just had. So I take it, though, the argument here is by executing the merger, the depositors in Interstate are damaged because everything you just described about Interstate may not be the case about the new institution. So my question is specifically on the second breach of fiduciary duty on did the charter allow depositors the right to vote on that? Because the first institution was well run, had a long history, and I don't know that the record says what the second one is, but certainly you can understand how depositors might say, hey, we're happy here. And if we're going to be moved, if the merger is going to happen, we are entitled to a vote on that. There are two responses to that question. First, they did not have a right to vote on the merger. And second, putting that aside, there are no damages as a result of the alleged breach of fiduciary duty, as you were suggesting, Judge Cobes, from that alleged denial of the right to vote on the merger. With respect to the right to vote on the merger, the plain language of the charter and Section 11 does not say they get a right to vote on the merger. They conceded in their brief that they do not generally have a right to vote on the merger. And I think in interpreting Section 11, we cannot forget the regulated nature of this industry. This is a highly regulated industry. Charter K revised, the charter that they were operating under, was a standard issue charter. And every version of the standard issue charter, as the OCC pointed out in its brief, contains the same version of Section 11 on the voting rights. And the OCC drafted that language. And it doesn't contain the word merger. And it doesn't say that they get a right to vote on the merger. And in fact, elsewhere in the charter, specifically in Section 3, it does use the word merger. So if the OCC had intended Section 11 to apply in the situation of a merger, it would have said it. We also know that the OCC has said in its regulations and in its guidance that it has never interpreted Section 11 as covering a mutual-to-mutual merger. That's just not something that the OCC, who I said drafted that charter, has ever interpreted as covering. Plaintiffs want to disregard that entire regulatory structure. And I think it's a very important context in which this question comes up. And the last point on that, on the voting rights, is the notion that they would have voting rights in a mutual-to-mutual merger doesn't make sense because their ownership interest doesn't change. What the Supreme Court said in Paulson 2 is owners in a mutual, it's different from a mutual-to-stock merger where they may have voting rights. But in a mutual-to-mutual merger, what you have before and after is the same thing. You have your deposit in the institution. You have whatever stated interest rate the institution says it's going to apply. And you have that contingent interest in the surplus only in the event of a solvent liquidation, which is not an enforceable ownership interest. Counsel, can I ask you about the charter? And rather than going through it piece by piece, I'm going to tell you kind of how I read it. And I just want to make sure that I'm right in your view. And I'll ask opposing counsel about this as well, that basically you have these profits at the end of each period. And you can put part of it in the general reserves. You can, this is the board of directors, you can put part of it into surplus. And then anything that's left shall be distributed in the form of interest. Is that sort of, I think he makes the point that you need to distribute all of it. Including the surplus. And I don't necessarily read it that way. I agree with you, Judge. What the charter says on the net earnings is that those shall be distributed, but only after those credits to the reserves and the credits to the surplus. And the board of directors, it says may credit the surplus. That permissive language is also in the net earnings provision of section 10. And that leaves the board of directors complete discretion to say we aren't going to distribute any dividends. We are going to instead take all of our net earnings and put them in the surplus. And then the last, the semicolon in lieu of provision in section 10 also gives directors complete discretion to decide whether to distribute the surplus. Judge Coates, I forgot to answer the second part of your question about the lack of damages here on the right to vote. Unless you have more questions, Judge Strass, on the charter. No, feel free. With respect to the lack of damages, you guys again hit the nail on the head. Every single breach of fiduciary duty here rests on the idea that they had an ownership interest. The only thing that plaintiffs are seeking here is a distribution of the surplus capital that is true with respect to the alleged denial of their breach of fiduciary duty. And so if they do not have that and the case law and the charter, it's not unique. It's a standard charter and the language is clear. If that's true, there are no damages here. How do we know that, that it's not unique? It says right in the charter, it's at joint appendix 73, it's charter K revised. That's what it is. And the OCC provided all of the citations to the standard charters over the year. Charter K revised, it's in the federal regulations that are attached to the OCC's brief. It's the same charter. And charter K revised was the same charter that was at issue in Paulson. The Supreme Court has already looked at this exact charter and said that mutual depositors do not have a legal right to distributions of surplus and dividends. What this case boils down to, your honors, is that plaintiff's ownership theory turns what it means to be a mutual depositor on its head. It is vitally important for mutual institutions to be able to retain their capital surplus so that they can weather economic storms and continue to serve their communities. And plaintiff's ownership theory rests that discretion away from directors and it gives it to depositors. And that threatens the very survival of these institutions because they may not have enough capital in their store next time we have something like the Great Recession come around. And with that, your honor, unless there are further questions, I will rest on the briefs and request that the court affirm the lower court's ruling. Very well, your honor. Thank you. Your honors, the opposing counsel referred to us wanting a windfall distribution of the surplus. What they gave was the windfall distribution of this surplus to the other savings and loan and its depositors. Because what we're talking about is when it went over there, it got diluted. Yes, our people were still depositors, but the interest was diluted. Counsel, I want to give you an opportunity to respond to the question I asked opposing counsel, which is my understanding of this charter, is when you have earnings after some period, you put part of it in the, the board of directors can put part of it in the general reserves, can put part of it in the surplus, that's up to them. And then anything that's remaining at the end of that period, the net earnings gets distributed. But that's, that's up to the, that's the only thing that shall be distributed. That's it. And so, and so the surplus though, is subject to that last line that, and they have the discretion to do it. So the only thing that your clients had a right to was the net earnings, not the surplus. Well, let's not forget the net earnings went into the surplus instead of being distributed as it should have been. But, but the, but the, the thing that's different here that, that is, is here, we're talking, not talking about normal surplus. We're not talking about surplus, the minimum standard set by the OCC. We're not talking about anything that was determined by the board of directors that it ought to be in reserves. It was just, it was $25 million in excess surplus beyond the regulatory requirements. But certainly the board had the discretion to retain excess or extra surplus. Isn't that right? They would have, yes, but they didn't have the discretion to, was to give it away to somebody else in a windfall distribution to another savings alone without honoring the provisions of the contract that they were bound by. And, and as for, as for this being, as for this being a standard form agreement, there's no showing of that in the record. And there is, there is no case considering what was pled in this case, a contractual right. The, the, there's, it's clear that, and oh, I want to mention one other thing, respond to one other thing. In the, in the opinion with respect to the no vote, there is simply no authority whatsoever. It's simply a merger isn't the same as those things listed. Although those things listed were everything that was involved in this merger with this other institution. The, the, the breach of fiduciary duty here was a failure to honor the contractual obligations and to, and to distribute and to give them a right to vote. And the, if they had not, if they'd given the right to vote and they'd said no, then they would have continued on as interstate federal savings alone with their interest. If they had decided to perhaps liquidate, we would have gotten the surplus. But what they couldn't do was give the surplus away without, without a vote of the policyholders and their, or the members. And therefore, they breached their fiduciary duty. This is not going to put any dent in the industry by any means. This is not a case that, that is going to impair the ability of the industry to operate. There's still provision, as you point out, the, that the, that the board of directors has discretion to set its limits and, and, and not distribute earnings or surplus if they feel it's necessary to protect. Here, we're talking about the very unusual circumstance of, of, of a savings alone with $25 million in surplus earnings. And there are no cases to support this opinion. No authority. He comes and says, and says in the opinion, this is based on membership, membership. It's not based on membership. It's based on contractual obligations that are, to which there's no question in the pleadings. And we're at a motion to dismiss stage. Inappropriate at this stage. Very well. Thank you, counsel. Case has been well argued and briefed. It's now submitted and we'll issue an opinion.